UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRES SEBASTIAN LARREA CORDOBA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 20 C 2721 |
| v. | ) | |
| | ) | |
| SAMANTHA LYNNE MULLINS, | ) | Judge Thomas M. Durkin |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this action filed by petitioner Andres Sebastian Larrea Cordoba ("Mr. Cordoba") against his estranged wife Samantha Lynne Mullins ("Ms. Mullins"), Mr. Cordoba seeks the return of his children to Ecuador pursuant to the Convention on the Civil Aspects of International Child Abduction, adopted by the United States pursuant to the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* (the "Hague Convention"). Ms. Mullins moves to dismiss or stay this action under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) in light of a state court proceeding she contends raises the same issues presented here. R. 12. For the reasons that follow, that motion is granted to the extent it seeks a stay.

**Background**

Mr. Cordoba is a citizen of Ecuador, and Ms. Mullins is a United States citizen and (now former) legal resident of Ecuador. The pair cohabited in Quito, Ecuador for several years and had two children together prior to their March 2018 marriage in

Quito. Toward the end of 2019, the couple grew apart.[1] According to Mr. Cordoba's petition, on January 4, 2020 and without informing Mr. Cordoba, Ms. Mullins boarded a flight with the children in the middle of the night, removing them to Chicago through Colombia. Instead of confronting Mr. Cordoba with her plans, Ms. Mullins told Mr. Cordoba that the children were sick, and could not see or speak to him. As a result, Mr. Cordoba did not learn that Ms. Mullins and the children had left the country until after they arrived in the United States. The children—now aged 4 and 8—are United States citizens and were both born in Quito where they resided until the events giving rise to this lawsuit. They currently reside with Ms. Mullins in a Chicago suburb.

Three days after Ms. Mullins fled the country with the couple's children, Mr. Cordoba filed an International Parental Child Abduction case in Ecuador and enrolled the children in the Children's Passport Issuance Alert Program. Thereafter on January 9, Ms. Mullins filed a petition for the dissolution of her marriage to Mr. Cordoba in the Circuit Court of Cook County, and obtained an emergency order of protection against Mr. Cordoba on behalf of herself and the children prohibiting Mr.

---

[1] Mr. Cordoba contends that he initiated legal proceedings in Quito seeking an uncontested dissolution of civil partnership against Ms. Mullins in November 2019, and that the parties began mediating the issues just before Ms. Mullins took the children to the United States. Ms. Mullins contends that the proceedings concerned solely the distribution of marital property; that there had been no mediation; and that she was never formally served in any case. Because the resolution of these matters is not central to the issues currently before the Court, the Court declines to address them further here.

Cordoba from contacting them because of alleged abuse. The two actions were consolidated into a single proceeding (that proceeding, the "State Action").

Mr. Cordoba subsequently moved to dismiss the State Action on March 18, 2020, arguing in part that the Circuit Court of Cook County lacked jurisdiction because Ms. Mullins was not an Illinois "resident" under relevant domestic relations law, and Illinois was not the children's "home state" as defined by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[2] Mr. Cordoba also pointed out that he had filed an application with the Ecuador Central Authority on March 9 for the return of the children to Ecuador under the Hague Convention. In response, Ms. Mullins filed a petition for declaratory judgment in the State Action that Mr. Cordoba "has no valid claim for return of the children because Ecuador is not the habitual residence of the children," and that one of the Hague Convention's exceptions applied to prevent their return even if it was. R. 12, Ex. 3 at 2.

Four days later, Mr. Cordoba filed this action, affirmatively seeking the children's return to Ecuador under the Hague Convention. Ms. Mullins moved to dismiss or stay shortly thereafter. Mr. Cordoba's motion to dismiss the State Action remains pending in the Circuit Court of Cook County.

---

[2] The UCCJEA is an alternative remedy to the Hague Convention that requires state courts to enforce child custody and visitation determinations made in a foreign country where the foreign court substantially conformed with the UCCJEA's jurisdictional standards, provided (with few exceptions) the parties had notice and opportunity to be heard. *See* travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/legain-info-for-parents/getting-custody-order-enforced-in-US.html (last visited June 19, 2020).

**Analysis**

Ms. Mullins contends that the Court should stay or dismiss Mr. Cordoba's Hague Convention petition in light of the "identical issues now pending in the Circuit Court of Cook County" by way of Mr. Cordoba's motion to dismiss the State Action and the declaratory judgment petition—both of which concern the Hague Convention and the propriety of returning the children to Ecuador. R. 12 at 5. In response, Mr. Cordoba argues that the declaratory judgment petition is "merely a request for custody of the minor children and . . . should be treated as such," yielding under Article 16 of the Hague Convention in favor of the Court's ruling on his petition here.

Generally speaking, the Hague Convention requires the return of a child wrongfully removed to another country in breach of the custodial rights of the left-behind parent. *See Redmond v. Redmond*, 724 F.3d 729, 731 (7th Cir. 2013) (citing Hague Convention, art. 3, T.I.A.S. No. 11670). And Mr. Cordoba is correct that Article 16 of the Hague Convention provides for an automatic stay of child custody proceedings pending resolution of any claim for return of a child. *See id.*, art. 16, T.I.A.S. No. 11670. Ms. Mullins doesn't argue otherwise. But the problem for Mr. Cordoba is: 1) Mr. Cordoba himself raised Hague Convention issues in his motion to dismiss the State Action; 2) return under the Hague Convention is not required unless the country from which the child was removed qualifies as the child's "habitual residence" and none of the Hague Convention's exceptions apply, *Redmond*, 724 F.3d at 732; and (3) Ms. Mullins contends in her declaratory judgment petition that not only is Quito, Ecuador not the "habitual residence" of the children, but also that the exception set forth in Article 13b of the Hague Convention prevents their return even

4

if it was. That article provides that return is not required when "there is a grave risk that [the children's] return would expose [them] to physical or psychological harm or otherwise place [them] in an intolerable situation." Hague Convention, art. 13b, T.I.A.S. No. 11670. Accordingly, any contention that the State Action concerns "child custody" alone mischaracterizes that proceeding.

The Court also disagrees with Mr. Cordoba's contention that Ms. Mullins's declaratory judgment petition isn't broad enough to cover the scope of his claim here. Indeed, that petition specifically asks the state court to declare: "the rights of the parties concerning [Mr. Cordoba's] claim for return of the children to Ecuador;" "that Ecuador is not the habitual residence of the children;" and "that return of the children to Ecuador would create a grave risk of harm and place them in an intolerable situation." R. 17-2 at 9. In other words, exactly the issues before the Court here.

Because the State Action concerns more than custody, the Court turns to *Colorado River* to determine whether to abstain. There, the Supreme Court recognized federal courts' "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River*, 424 U.S. at 817. Nonetheless, concerned about "wise judicial administration" and "conservation of judicial resources" among other things, the Supreme Court held that under "limited" and "exceptional" circumstances, a federal district court may stay or dismiss an action when there is an ongoing parallel action in state court. *Id.* at 818; *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989). But "a federal court cannot lightly abjure its responsibility to assert jurisdiction." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th

5

Cir. 1985). So "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l, Inc. v. Nimelias Enterprises, S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal citations omitted).

Generally speaking, federal and state court actions are parallel if they "involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006). Yet the question is not whether the suits are "formally symmetrical" or identical, but rather whether there is "a 'substantial likelihood' that the foreign litigation 'will dispose of all claims presented in the federal case.'" *AAR Int'l*, 250 F.3d at 518 (quoting *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988)).

If a court concludes that two actions are parallel, it then must analyze various factors to determine whether "exceptional circumstances" exist to justify deference to the state court. Those factors include: (1) whether the state court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the two courts; (5) the source of governing law; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Lumen*, 780 F.2d at 694-95. But the factors are not to be considered a "mechanical

6

checklist," and no single factor is determinative. *See LaDuke*, 879 F.2d at 1559 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Instead, the factors should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone,* 460 U.S. at 21, and the decision based on the totality of the circumstances, *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900 (7th Cir. 1999).

Abstention is appropriate here. First, this action and the State Action are parallel, because they concern the same parties and, as shown, the same issue. That is, the propriety of returning the children to Ecuador under the Hague Convention.[3] Further, "exceptional circumstances" justify deference to the state court. Indeed, although some of the factors are neutral or inapplicable, others weigh in favor of abstention. Perhaps most compelling is the fact that the Hague Convention issue was first raised in the Circuit Court of Cook County—whether the Court considers the date Mr. Cordoba himself raised his Hague Convention claim in his motion to dismiss, or the date on which Ms. Mullins filed her declaratory judgment petition thereafter. Mr. Cordoba's filing here thus amounts to something akin to forum shopping, "which courts should discourage through abstention." Ion Hazzikostas, *Federal Court Abstention and the Hague Child Abduction Convention*, 79 NYULR 421, 450 (2004) ("the first consideration is whether the left-behind parent directly has raised [the

---

[3] And it does not matter that the State Action concerns other issues too. *See Lumen*, 780 F.3d at 695 (holding that abstention was proper under *Colorado River* because although state action was broader, "one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court").

Hague Convention] in the state court proceedings," because if so, he has "by all outward indications chosen the forum in which [he] intends to litigate," and changing his mind later "constitutes classic forum shopping"). And there can be little doubt that staying these proceedings would avoid piecemeal litigation, since, as discussed, the State Action will resolve the same Hague Convention issues present here. Nor can Mr. Cordoba contend that the state court could not adequately protect his rights. The state court is at least as equipped as this Court to handle the Hague Convention dispute,[4] and the other issues between the parties are the province of the state court and would be resolved in the State Action regardless of the Court's decision here. In sum, this action is duplicative and unnecessary in light of the already-existing State Action in which the Hague Convention issue was already presented by both Mr. Cordoba and Ms. Mullins.

Nevertheless, Mr. Cordoba makes much of the fact that he was "unable to locate any case where the court abdicated its jurisdiction under the Hague Convention in deference to a pending child custody or order of protection proceeding in state court for any reason," and points out that the Third Circuit Court of Appeals in *Yang v. Tsui*, 416 F.3d 199 (3d Cir. 2005) specifically declined to do just that. R. 16 at 7-9. But the *Yang* court expressly relied upon the fact that there, "the Hague Convention issues ha[d] not been presented in state court." 416 F.3d at 203, 204. And

---

[4] In fact, determination of the children's habitual residence and possible harm to them if returned to Ecuador likely implicate considerations that the state court has some level of expertise in handling.

as explained, the same Hague Convention issues present here have been raised by both sides in the State Action.

Accordingly, because the State Action is parallel to this one and "exceptional circumstances" exist to justify this Court's abstention, this proceeding is stayed pending further order of the Court. *See Lumen*, 780 F.2d at 698 (holding that proper procedure after concluding that abstention is appropriate is to stay the proceedings including because doing so "permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end").

## Conclusion

For the reasons stated, Ms. Mullins's motion to dismiss or stay, R. 12, is granted to the extent that it seeks a stay, and this case is stayed pending further order of the Court. The parties are directed to file a joint written report on August 7, 2020 regarding the status of the State Action as of that date.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: June 23, 2020

9